UNITED STATES OF AMERICA,

    **Plaintiff**,

        **v.**                **Criminal No.** 14-423 (FAB)

ALEJANDRO CARRASCO-CASTILLO,

    **Defendant.**

## OPINION AND ORDER

BESOSA, District Judge.

Defendant Alejandro Carrasco-Castillo ("defendant") moved to admit into evidence, pursuant to Federal Rules of Evidence 201, 901, and 902, a certification that attorney Elías Sánchez-Sifontes ("Sánchez") was not admitted to practice law in Puerto Rico until 2013. See Docket No. 378 at p. 156; see also Docket Nos. 372 and 373. The Court orally indicated that the motion was denied and that a written opinion would be issued. The reasons for the Court's denial are detailed below.

### I. Background

In this case, defendant stood trial for crimes associated with a scheme wherein defendant was accused of soliciting, accepting, and agreeing to accept bribe and kickback payments in exchange for agreeing to help another individual, Juan Carlos Mercado ("Mercado,") to obtain municipal contracts. See Docket

No. 3; Docket No. 380 at pp. 16-20. Mercado testified that he paid defendant by check and disguised the payments as legal fees. See, e.g., Docket No. 377 at pp. 11-12, 36, 38-39, 42-44.

Mercado is an environmental engineer. See Docket No. 375 at pp. 15-17. As part of his business, Mercado worked with various attorneys. See Docket No. 377 at pp. 47-48.

One attorney with whom Mercado worked was Sánchez. See id.; Docket No. 378 at p. 16. Sánchez worked for Mercado and for his clients during 2009 through 2012. See Docket No. 378 at pp. 57, 63-64. Sánchez assisted with matters before the United States Environmental Protection Agency and other issues. Id. at pp. 16-17.

Mercado paid Sánchez for legal services and consulting. Id. at p. 57. Mercado billed his client for Sánchez's work and he paid Sánchez. Id. at p. 17. Mercado denied that the payments were bribes. Id. at p. 57. Tax documents associated with the payments were drawn up for the years 2009 to 2012. Id. at p. 22.

On cross-examination, defense counsel asked Mercado if he knew whether Sánchez was an attorney of law during the years 2009 to 2012. Id. at pp. 64-65. Mercado said he did not know. Id. at p. 65. Defense counsel then showed Mercado a certified document to refresh his memory on whether Sánchez was an attorney during

the years 2009 to 2012.  Id. at p. 67.  The document did not refresh Mercado's memory.  Id.

After the government rested and the jury left, defense counsel moved to introduce the certified document into evidence pursuant to Federal Rules of Evidence 201, 901, and 902.  Id. at p. 156. According to defense counsel, the certified document is evidence that Sánchez became a lawyer in 2013.  Id. at p. 158.  Defense counsel argued that the document is relevant because it shows the payments to Sánchez could not have been for legal services.  Id. Expounding, defense counsel stated,

> I am not saying that they are bribes because I don't know.
>
> What I am saying, Your Honor, if I may, is that you can infer that [Mercado] would write checks for whoever as a lawyer, even if they were not lawyers, and took advantage of those payments for his income tax returns. That is basically it.  An inference, Your Honor.

Id.  Defense counsel further stated that a possible inference is that Mercado was lying.  Id. at p. 159.  Additionally, defense counsel stated that the document goes to Mercado's credibility. Id. at p. 160.

The government opposed admission of the document.  The government questioned the relevance of the certified document. Id. at pp. 156–60.

On the same day, the parties each filed memoranda in support of their positions.  In its memorandum the government built on its relevancy argument, stating, "That Mercado legitimately paid [Sánchez] for legal and consulting work during the same time period, regardless of whether [Sánchez] was an attorney admitted to practice in Puerto Rico at the time, has no bearing on 'determining the action,' that is the criminal charges, against the defendant."  (Docket No. 372 at p. 2.)  The government also argued that the document does not call into question Mercado's credibility; that defense counsel used the document to refresh Mercado's memory rather than to impeach his credibility; and that the document should be excluded as extrinsic evidence pursuant to Federal Rule of Evidence 608(b) to the extent defendant wants to use it to impeach Mercado's credibility.  Id. at pp. 2-3.

Defendant argued that the document is relevant.  See Docket No. 373 at pp. 2-3.  Defendant further contended that Rule 608(b) is not a proper basis to exclude the document because it "does not constitute extrinsic evidence of specific instances of any conduct of [Mercado]"; rather, defendant says, it is extrinsic evidence of a third party's bar admission which tends to make less likely Mercado's truthfulness concerning his testimony that Sánchez was his attorney and performed satisfactorily during the years 2009 to 2012.  Id.  Defendant also asserted, in tension with defense

counsel's statement quoted above, that the document weakens the probable truthfulness of Mercado's statement that the payments to Sánchez were not a bribe. Id. at p. 3. Additionally, defendant posited, Mercado's credibility is relevant because he is the government's principal fact witness and the document places extrinsic facts before the jury discrediting Mercado's credibility. Id. Defendant also clarified that the document is a certification of the highest court of the Commonwealth of Puerto Rico. Id. at p. 1.

## II. Discussion

### A. Judicial Notice (Rule 201)

Pursuant to Federal Rule of Evidence 201(b), "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Advisory Committee Note to that Rule provides:

> The usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses. If particular facts are outside the area of reasonable controversy, this process is dispensed with as unnecessary. A high degree of indisputability is the essential prerequisite.

Advisory Committee's Note to Fed. R. Evid. 201(b); see United States v. Bello, 194 F.3d 18, 23 (1st Cir. 1999).

The Supreme Court of Puerto Rico's certificate concerning Sánchez's admission as an attorney in 2013 seems an easy candidate for judicial notice as a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Courts have previously taken judicial notice of state bar membership records. See, e.g., Castillo-Pérez v. Immig. & Nat. Serv., 212 F.3d 518, 524 n.6 (9th Cir. 2000) (taking judicial notice of a person's bar membership resignation date); Nabaya v. C.J. Byron, 264 F. Supp. 3d 187, 190 (D.D.C. 2017) (taking judicial notice of the membership of court's own bar); Jackson v. United States, Civ. No. 12-388, 2014 WL 5474132, at *12 n.6 (M.D. Fla. Oct. 29, 2014) (taking judicial notice of an individual's good standing membership in Florida bar); Urbanique Prod. v. City of Montgomery, 428 F. Supp. 2d 1193, 1209 n.11 (M.D. Ala. 2006) (taking judicial notice that Alabama State Bar records reveal that an individual is a member in good standing).

Numerous authorities hold that a fact may not be established pursuant to judicial notice if barred by other provisions of law. A leading treatise states that "other rules of evidence may justify the denial of judicial notice if the proffered

fact is irrelevant, unduly prejudicial, or otherwise excludable."
1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal
Evidence § 201.30[1] at p. 201-74 (Mark S. Brodin, ed., Matthew
Bender 2d ed. 2019) [hereinafter Weinstein].  The treatise cites
one case holding judicial notice subject to Rules 403 and 611,
Knop v. Johnson, 667 F. Supp. 467, 485 (W.D. Mich. 1987), a case
denying judicial notice to irrelevant facts, Trans-Sterling, Inc.
v. Bible, 804 F.2d 525, 528 (9th Cir. 1986), and another case
stating that "a court may refuse to take judicial notice of facts
that are irrelevant to the proceeding or (in certain contexts)
otherwise excludable under the Federal Rules," United States v.
Falcon, 957 F. Supp. 1572, 1584–85 (S.D. Fla. 1997) (collecting
authorities).  Another court believes "it is clear that the court's
power to take judicial notice 'at any stage' may be circumscribed
by other considerations."  Colonial Leasing Co. of New Eng., Inc.
v. Logistics Control Grp. Int'l, 762 F.2d 454, 461 (5th Cir. 1985).

        The First Circuit Court of Appeals has made
countervailing statements on this issue.  On the one hand, the
court has declined to take judicial notice of certain documents
because they were not relevant to the issues on appeal.  Law
Offices of David Efron v. Matthews & Fullmer Law Firm, 782 F.3d
46, 56 n.7 (1st Cir. 2015).  The court has also applied Rule 403
to a judicially noticed fact and stated that "[i]t is well-accepted

that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Kowalski v. Gagne, 914 F.2d 299, 305-06 (1st Cir. 1990). On the other hand, the court has taken judicial notice of a fact "irrelevant to . . . the merits of th[e] case." Kassel v. Gannett Co., Inc., 875 F.2d 935, 951 n.16 (1st Cir. 1989).

Taking notice of facts that are irrelevant, overly prejudicial, or collateral is contrary to the policies underlying Rule 201's judicial notice provisions. The policy behind Rule 201 is to dispense with the usual forms of proof in certain cases because the proof is unnecessary. See Advisory Committee's Note to Fed. R. Evid. 201(b); Bello, 194 F.3d at 23. But if the jury can be weighed down by irrelevant, overly prejudicial, or extrinsic facts, any benefit in efficiency from avoiding the usual form of proofs would be outweighed by the harm to the proceeding.

Therefore, the relevance, prejudicial effect, and collateral nature of the Supreme Court certificate is considered. Before doing so, however, authentication requirements are discussed to make clear that an authentic certificate would still need to meet those same admissibility requirements.

**B.    Authenticity Requirements (Rules 901 and 902)**

"[D]ocumentary evidence must be authentic."    United States v. Blanchard, 867 F.3d 1, 5 (1st Cir. 2017).    Authenticity is a condition precedent to admissibility.    See id.

"Authenticity is closely related to relevance."    Id. "[I]f an item is not what it purports to be then it may not be relevant to the inquiry."    Id.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."    Fed. R. Evid. 901(a).    Evidence of authenticity may be extrinsic to the document, such as a custodian's testimony.    Blanchard, 867 F.3d at 5.    Evidence of authenticity "can also come from elements of the document itself, such as '[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.'"    Id. at 5–6 (alteration in original) (quoting Fed. R. Evid. 901(b)(4)).

"The standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be."    Id. at 6 (internal quotation marks omitted).    "This standard does not require the

proponent of the evidence to rule out all possibilities inconsistent with authenticity." Id. (internal quotation marks omitted).

Some evidence is self-authenticating pursuant to Rule 902, including (i) domestic public documents that are signed and sealed, (ii) domestic public documents that are not sealed but are signed and certified, and (iii) a copy of an official record certified as correct according to certain requirements. Fed. R. Evid. 902(1), (2), (4).

One need not spend much time on whether the 2013 certificate of bar admission is authentic. It should be considered authentic because of "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," pursuant to Rule 901(b)(4). These characteristics would warrant a reasonable person to determine that the evidence is what it purports to be. Blanchard, 867 F.3d at 6. The bar admission certificate is also considered a self-authenticating document because it has the seal, signature, and/or certification previously discussed. See Fed. R. Evid. 902(1), (2), (4).

Authentication, however, is merely one step of the admissibility analysis. "An exhibit is not admissible simply because it has been authenticated. The proponent must still clear

the other hurdles to admissibility." Weinstein § 901.02[1] at
p. 901-9. To put a fine point on it, "'[s]elf-authenticating'
documents are not necessarily admissible. Rule 902 addresses only
the requirement of authentication. To be admissible . . . the
documents must also be relevant, not excludible under the hearsay
rules, and so on." Id. § 902.02[2] at p. 902-7.

### C. Relevance (Rule 401)

Evidence is relevant if "it has any tendency to make a
fact more or less probable than it would be without the evidence"
and "the fact is of consequence in determining the action." Fed.
R. Evid. 401(a)-(b). "Relevancy is not assessed in a vacuum—it is
gauged in light of the underlying substantive law." Bielunas v.
F/V Misty Dawn, Inc., 621 F.3d 72, 76 (1st Cir. 2010) (internal
quotation marks omitted).

"For evidence to be relevant it need only move the
inquiry forward to some degree on a fact of consequence."
Franchina v. City of Providence, 881 F.3d 32, 49 (1st Cir. 2018)
(internal quotation marks omitted). "Evidence may be relevant
under Rule 401's definition, even if it fails to prove or disprove
the fact at issue—whether taken alone or in combination with all
other helpful evidence on that issue." United States v. Guzmán-
Montañez, 756 F.3d 1, 7 (1st Cir. 2014) (internal quotation marks
omitted).

The purposes for which the certificate is being offered are to undercut Mercado's statements that Sánchez was his attorney during 2009 to 2012, that Sánchez provided satisfactory legal representation, and that Mercado's payments to Sánchez were not bribes.  <u>See</u> Docket No. 373 at p. 3.  Defendant also offers the document in support of the point that Mercado took advantage of the payments for his income tax returns, <u>see</u> Docket No. 378 at p. 158.  Those purposes do not seem to have anything to do with a fact of consequence in this litigation.

In any event, a relevancy determination pursuant to Rule 401 need not be reached.  The certificate can be, and is, excluded as collateral impeachment.

### D.  Collateral Impeachment by Contradiction

"Impeachment by <u>contradiction</u> is a recognized mode of impeachment not governed by Rule 608(b), but by common-law principles."  <u>United States v. Pérez-Pérez</u>, 72 F.3d 224, 227 (1st Cir. 1995) (citation omitted).  Impeachment governed by Rule 608(b)—attacking a witness's character for truthfulness using extrinsic evidence to prove specific instances of a witness's conduct—is discussed *infra*.

"[A] party may not present extrinsic evidence to impeach a witness by contradiction on a collateral matter."  <u>United States v. Beauchamp</u>, 986 F.2d 1, 3 (1st Cir. 1993).  "A matter is

considered collateral if 'the matter itself is not relevant in the

litigation to establish a fact of consequence, i.e., not relevant

for a purpose other than mere contradiction of the in-court

testimony of the witness.'" United States v. Catalán-Román, 585

F.3d 453, 468-69 (1st Cir. 2009) (quoting Beauchamp, 986 F.2d

at 4). "[L]argely for reasons of efficiency, extrinsic evidence

to impeach is only admissible for contradiction where the prior

testimony being contradicted was itself material to the case at

hand." Pérez-Pérez, 72 F.3d at 227.

> The rule restricting impeachment to non-collateral
> matters is analogous to Rule 403's relevancy balancing
> test, which calls for relevant evidence to be excluded
> when its "probative value is substantially outweighed
> by . . . considerations of undue delay, [or] waste of
> time . . . ." Although any demonstrated inconsistency
> in a witness's statement may impeach a witness's
> credibility, other concerns (such as wasting time and
> misleading the jury) become more important when the
> inconsistency at issue involves a statement relating to
> a matter that "'is not relevant in the litigation to
> establish a fact of consequence.'" On the other hand,
> when a statement that would be the subject of impeachment
> "is logically relevant to the merits of the case as well
> as the witness's credibility, it is worth the additional
> court time entailed in hearing extrinsic evidence."

Catalán-Román, 585 F.3d at 469 (alteration in original) (citations

omitted).

        In Catalán-Román, the First Circuit Court of Appeals

held that a district court erred in excluding evidence as

collateral. Id. at 469-70. The defendants sought to impeach a

witness's testimony about defendants' behavior during a robbery or

shooting.  Id.  The district court did not allow the impeachment

because, in its view, the impeachment would be collateral unless

it directly addressed whether defendants committed the crime.  See

id.  The Catalán-Román court said this was improper because the

details that defendants sought to impeach helped the government

establish premeditation and could also be relevant at sentencing.

Id.

The bar admission certificate is being offered to

contradict collateral matters.  Mercado testified that Sánchez

performed satisfactory legal work during 2009 to 2012 and that

payments to Sánchez were not bribes.  To the extent the bar

admission certificate even contradicts or weakens the likelihood

of truth of those statements, doing so is not relevant to

establishing a fact of consequence in the litigation.

The bar admission certificate is not offered strictly to

contradict those statements, but also to show that the witness is

a liar.  See Docket No. 373 at p. 3; Docket No. 378 at p. 160.  As

discussed in the next section, this runs into the same problem.

**E.    Collateral    Impeachment    to    Attack    Character    for
       Truthfulness (Rule 608)**

Rule 608(b) provides that "extrinsic evidence is not

admissible to prove specific instances of a witness's conduct in

order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). "Like the general rule barring the use of extrinsic evidence to impeach a witness on a collateral matter through contradiction, the purpose of Rule 608(b)'s prohibition of extrinsic evidence is to avoid holding mini-trials on irrelevant or collateral matters." Beauchamp, 986 F.2d at 3 n.1.

The meaning of collateral matters for purposes of Rule 608(b) is similar to that discussed in the preceding subsection. See United States v. Sabean, 885 F.3d 27, 39 (1st Cir. 2018); United States v. Marino, 277 F.3d 11, 24 (1st Cir. 2002). As one court said, "[a] matter is collateral if evidence relating to it could only have been introduced for the purpose of impeachment." Sabean, 885 F.3d at 39.

The reasons for excluding the evidence here are the same as those in the preceding subsection, because collateral matters are not proper bases to impeach both by contradiction and by attacking character for truthfulness. Defendant argues that Rule 608(b) is inapplicable because the bar admission certificate does not constitute extrinsic evidence of specific instances of Mercado's conduct. See Docket No. 373 at p. 3. Even if this assertion is correct, the Court would find the document excluded

based on guidance from the more general rule as to collateral matters. <u>Beauchamp</u>, 986 F.2d at 3 n.1.

## IV.  Conclusion

The 2013 bar admission certificate is excluded.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, December 11, 2019.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE